# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| BARBARA MONROE, ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:21CV586 HEA |
| ) | |
| KILOLO KIJAKAZI,[1] ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
|     Defendant. ) | |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court for judicial review of the final decision of the Commissioner of Social Security denying the application of Plaintiff Barbara Monroe for disability and disability insurance benefits under Title II of the Social Security Act (SSA), 42 U.S.C. §§ 401-434. The Court has reviewed the filings and the administrative record as a whole, which includes the hearing transcript and medical evidence. The decision of the Commissioner will be affirmed.

## Background

Plaintiff applied for disability and disability insurance benefits on March 2, 2019. A hearing was held on September 16, 2020 in front of an Administrative

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted, therefore, for Andrew M. Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Law Judge (ALJ). In an opinion issued on October 30, 2020, the ALJ determined that Plaintiff was not under a disability at any time from her alleged onset date of February 1, 2019. The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. In her decision, the ALJ found Plaintiff had the severe impairments of degenerative disc disease, idiopathic neuropathy, left ankle fracture status post open reduction and internal fixation, fracture of the right hallux, fracture of the left 4th and 5th toes, and obesity. The ALJ noted Plaintiff's non-severe impairments, including depression. However, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. While the ALJ found none of Plaintiff's impairments met or medically equaled a listed impairment, the ALJ did find some limitations. Specifically, the ALJ found Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work, as defined in 20 CFR 404.1567(a) with the following limitations:

> …[Plaintiff] can occasionally operate foot controls with the right and left foot. She can occasionally climb ramps and stairs but never climb ladders, ropes, or scaffolds. She can frequently balance and occasionally stoop, kneel, crouch, and crawl. She can occasionally lift and carry 10 pounds and frequently lift and carry less than 10 pounds. She needs to alternate from sitting to standing at will but will remain at the work station and on task.

Based on vocational expert testimony, the ALJ found Plaintiff could perform her past relevant work as an accounting clerk, which does not require the

performance of work-related activities precluded by Plaintiff's RFC (20 CFR 404.1565).

Plaintiff filed a timely Request for Review of Hearing Decision, and the Appeals Council denied the request for review. Plaintiff has exhausted all administrative remedies. The decision of the ALJ stands as the final decision of the Commissioner.

## Hearing Testimony

Plaintiff, who was born on March 8, 1957, was represented by counsel at her hearing before the ALJ. Plaintiff testified that she lives alone in a one-story home. Plaintiff testified her most recent job was in February 2019, and she worked for Enterprise Holdings for eight years as an accounting coordinator before she was terminated. She worked at a standing workstation for the last two years of her job because she couldn't sit, and the most weight she had to lift and carry was approximately ten pounds. Prior to Enterprise Holdings, she worked as an accounting coordinator for Macy's.

Plaintiff testified that she cannot go to work full-time because she cannot sit or stand at a workstation for more than ten to fifteen minutes. She also has issues with arthritis and neuropathy in her right hand. She experiences pain in her hands, feet, and lower back. Plaintiff testified her pain level in her hands and her feet is a six, on a scale between zero (no pain) and ten (the most excruciating pain the body is capable of experiencing). The pain in her hands, mainly the right one, has been

for the past eight months and the pain in her feet has been since 2015. On the same pain scale, she testified her back pain level has been a seven through a nine for approximately two years. She testified sitting makes her pain symptoms more severe, and she cannot walk up or down stairs. She takes medications and uses ice to help with the pain. She doesn't use a cane, walker or a wheelchair, but does use a back brace which she obtained on her own.

    Plaintiff testified she sees Dr. Payal Patel, a primary care doctor, William Gerlach, a podiatrist, and Dr. Hugh Berry for pain management. She also sees Jaron Asher and Kelly Gable for psychiatric help and goes to physical and swimming therapy appointments. She currently takes the following medications: Amitriptyline, Amlodipine, Atenolol, Bupropion, Baclofen, Gabapentin, Losartan, Mirtazapine, Percocet, Naproxen and Vitamin D and B. Plaintiff testified as to side effects that Percocet puts her to sleep, and Gabapentin and Baclofen are muscle relaxers which slows down her thought process. She thinks her depression makes her tired and she doesn't have a lot of energy. As to her memory, she said it isn't good and her ability to focus and concentrate is very poor.

    As for her activities of daily living, Plaintiff testified she isn't around crowds of people due to the pandemic, and she hasn't seen any friends since the beginning of the year. She is able to take care of her own hygiene, such as dressing and bathing herself.  She sleeps poorly and only gets about four to six hours a night due to pain. She has a driver's license, pays her own bills and does her own grocery

4

shopping, going to the store for about fifteen minutes once or twice a week. She takes care of all her meals, but orders takeout a lot. She takes out the trash and does her own dishes and laundry, but needs help with other chores, such as sweeping, vacuuming and yard work. To pass the time of day, she watches TV and uses her tablet to play games or watch the news for about three hours each day. She has trouble concentrating on the games she plays, so she switches her use between her tablet and watching TV. She occasionally gets on social media and does not attend church or social organizations. Plaintiff testified she is able to lift up to twenty pounds and can walk about ten minutes but spends about eight to ten hours a day leaning back on the sofa with her feet up.

    A Vocational Expert (VE) testified, and the ALJ posed the following hypothetical: an individual with the Plaintiff's same age, education, and work history, who is able to perform work only at a light exertional level, who is limited to standing and walking for two hours; can occasionally climb ramps and stairs; can never climb ladders, ropes or scaffolds; can frequently balance and occasionally stoop, kneel, crouch and crawl. The VE testified, consistent with the Dictionary of Occupational Titles (DOT), that person could perform Plaintiff's past work as an accounting clerk.

    A second hypothetical posed, assuming the same facts as the first except the individual is able to perform work at a sedentary exertional level and added that the individual would need to alternate from standing at will, remaining at the

5

workstation and on task. The VE testified that person could perform Plaintiff's past work as an accounting clerk.

A third hypothetical posed, assuming the same facts as hypothetical two, added that the individual is limited to simple, routine and repetitive tasks and would be off task ten percent of the time in addition to normal breaks. The VE testified that person could not perform Plaintiff's past work as an accounting clerk and Plaintiff did not have any transferable skills because it is unskilled work. The factors in hypotheticals two and three were consistent with the DOT, except as to the sit/stand and off task factors, which the VE testified to from her experience.

## **Legal Standard**

To be eligible for benefits under the Social Security Act, Plaintiff must prove that [s]he is disabled. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Secretary of Health & Human Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual will be declared disabled "only if [her] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education,

6

and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner engages in a five-step evaluation process to determine whether a claimant is disabled. *See* 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). At Step One, the ALJ determines whether the claimant is currently engaged in substantial gainful activity. At Step Two, the ALJ considers whether the claimant has a "severe" impairment or combination of impairments. At Step Three, the ALJ determines whether the severe impairment(s) meets or medically equals the severity of a listed impairment; if so, the claimant is determined to be disabled, and if not, the ALJ's analysis proceeds to Step Four. At Step Four of the process, the ALJ must assess the claimant's residual functional capacity (RFC) – that is, the most the claimant is able to do despite her physical and mental limitations, *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) – and determine whether the claimant is able to perform any past relevant work. *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (RFC assessment occurs at the fourth step of process).

The claimant bears the burden through Step Four of the analysis. If [s]he meets this burden and shows that [s]he is unable to perform [her] past relevant work, the burden shifts to the Commissioner at Step Five to produce evidence demonstrating that the claimant has the RFC to perform other jobs in the national economy that exist in significant numbers and are consistent with [her]

7

impairments and vocational factors such as age, education, and work experience. *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012).

The Court must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion. *Jones*, 619 F.3d at 968. Additionally, the Court must consider evidence that supports the Commissioner's decision as well as any evidence that fairly detracts from the decision. *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016). If, after reviewing the entire record, it is possible to draw two inconsistent positions and the Commissioner has adopted one of those positions, the Court must affirm the Commissioner's decision; the Court may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary outcome. *Id; see also Fentress v. Berryhill*, 854 F.3d 1016, 1021 (8th Cir. 2017).

**Residual Functional Capacity (RFC)**

A claimant's RFC is the most an individual can do despite the combined effects of all of his or her credible limitations. *See* 20 C.F.R. § 404.1545. An ALJ's RFC finding is based on all of the record evidence, including the claimant's testimony regarding symptoms and limitations, the claimant's medical treatment

8

records, and the medical opinion evidence. *See Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir.2010); 20 C.F.R. § 404.1545; Social Security Ruling (SSR) 96–8p.

## **Decision of the ALJ**

At Step One of the decision, the ALJ found that Plaintiff has not engaged in substantial gainful activity since February 1, 2019, the alleged onset date. At Step Two, the ALJ found that Plaintiff had the severe impairments of degenerative disc disease, idiopathic neuropathy, left ankle fracture status post open reduction and internal fixation, fracture of the right hallux, fracture of the left 4th and 5th toes, and obesity. The ALJ noted Plaintiff's non-severe impairments, including depression. However, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, so the ALJ's analysis proceeded to Step Four. While the ALJ found none of Plaintiff's impairments met or medically equaled a listed impairment, the ALJ did find some limitations. Specifically, the ALJ found Plaintiff retained the RFC to perform sedentary work, as defined in 20 CFR 404.1567(a), with the following limitations: Plaintiff can occasionally operate foot controls with the right and left foot. She can occasionally climb ramps and stairs but never climb ladders, ropes, or scaffolds. She can frequently balance and occasionally stoop, kneel, crouch, and crawl. She can occasionally lift and carry 10 pounds and frequently lift and carry less than 10

9

pounds. She needs to alternate from sitting to standing at will but will remain at the work station and on task.

At Step Four, the ALJ found Plaintiff could perform her past relevant work as an accounting clerk, which does not require the performance of work-related activities precluded by Plaintiff's RFC (20 CFR 404.1565). Therefore, continuing to Step Five was not necessary, and the ALJ found Plaintiff not disabled.

## Statement of the Issues

Generally, the issues in a Social Security case are whether the final decision of the Commissioner is consistent with the Social Security Act, regulations, and applicable case law, and whether the findings of fact are supported by substantial evidence on the record as a whole. The issues here are (1) whether substantial evidence supports the ALJ's finding that Plaintiff's depression is a non-severe impairment; (2) whether the RFC is supported by substantial evidence related to pain and side effects of medications; and (3) whether the ALJ's Step Four finding was supported by substantial evidence.

## Discussion

The ALJ carefully detailed her findings through her discussion of Plaintiff's impairments. As described above, this Court's role is to determine whether the ALJ's findings are supported by substantial evidence on the record as a whole. *See* 42 U.S.C. §§ 405(g); 1383(c)(3); *Richardson*, 402 U.S. at 401; *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). So long as there is substantial evidence in the

10

record that supports the decision, this Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Haley v. Massanari,* 258 F.3d 742, 747 (8th Cir. 2001).

**Whether Substantial Evidence Supports the ALJ's Finding that Plaintiff's Depression is a Non-Severe Impairment**

Plaintiff argues that substantial evidence does not support the ALJ's finding that her depression is a non-severe impairment. Step two of the evaluation states that a claimant is not disabled if her impairments are not "severe." *Simmons v. Massanari,* 264 F.3d 751, 755 (8th Cir.2001); 20 C.F.R. § 416.920(a)(4). When evaluating mental impairments, the ALJ considers the entire record and rates the degree of Plaintiff's functional impairments in four broad functional areas: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. 20 C.F.R. § 404.1520a(c). If the degree of limitation in each of the four areas is "none" or "mild," an ALJ will generally find the mental impairment non-severe unless the evidence indicates Plaintiff has a more than minimal limitation to performing basic work activities. 20 C.F.R. § 404.1520a(d)(1). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work." *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), citing *Nguyen v. Chater*, 75 F.3d

11

429, 430–31 (8th Cir. 1996). It is Plaintiff's burden to establish that her impairment is severe. *Mittlestedt v. Apfel,* 204 F.3d 847, 852 (8th Cir. 2000).

The ALJ found Plaintiff had no more than mild limitation in the four functional areas, and after a consideration of the entire record, she concluded that Plaintiff's medically determinable mental impairment of depression is non-severe. The first functional area is understanding, remembering or applying information, and the ALJ found Plaintiff had no limitation in this area. In her findings, the ALJ noted multiple examinations where Plaintiff presented with no cognitive limitations or memory deficits and noted she had intact memory findings during the consultative examination. As to interacting with others, the ALJ found mild limitation. The ALJ acknowledged that Plaintiff reported difficulties getting along with others and social isolation, but explained Plaintiff spent time with family once a month and examinations noted no impaired eye contact or symptoms of guardedness, evasiveness, irritability, verbal aggression, or physical aggression. When rating Plaintiff in the category of concentration, persistence, or maintaining pace, the ALJ found mild limitation. The ALJ noted her reports of poor energy and attention problems, but during the consultative examination, she did not have slowed psychomotor activity, fidgeting, pressured speech, or difficulty maintaining attention during the examination. Although an examination indicated a reduced rate of speech, Plaintiff was not distractible, inattentive or in need or redirection by mental health providers. When discussing the fourth and final functional area of

12

adapting or managing oneself, the ALJ found Plaintiff had a mild limitation. The ALJ detailed Plaintiff's reported activities, noting that she said she could drive, leave her house alone, get groceries, crochet, and read. Although Plaintiff reported a history of cutting herself and passive thoughts of death at her consultative examination, she demonstrated an ability to think and reason correctly, and her abstract reasoning was good, though she had fair to poor insight and fair judgment. Plaintiff had no recent history of cutting behavior. Most examinations showed Plaintiff regularly had normal insight and judgment in treatment, and only sometimes had a depressed mood.

The ALJ also considered evidence that was inconsistent with Plaintiff's allegations of severe mental impairments including her own reports, the mental status findings, her positive response to treatment, and the opinion evidence. For instance, the ALJ noted that Plaintiff alleged depression since childhood and stated she could not remember a time when she did not feel depressed. However, despite a history of depression, she had still managed to work even though she claims the physical problems are her barrier to working.

The ALJ considered Plaintiff's treatment through June 2020 and found she had generally unremarkable findings aside from subjective reports of depressed mood or anxiety. She reported a history of psychiatric treatment, but the treatment records showed no psychiatric care from the alleged onset date to August 2019, at which time she asked for a referral for counseling services and received psychiatric

13

treatment until June 2020. She did not have outbursts or require intensive outpatient care. Mental status examinations showed depressed mood and restricted affect at times, but otherwise the findings were generally within normal limits. Plaintiff noticed a significant increase in depressive symptoms and poor energy when she stopped her medications. However, she reported her medications worked well and that she experienced an improved mood and energy when she restarted her medications.

The ALJ outlined concerns of malingering and exaggerating symptoms for gain by the consultative examiner, J. Coulter, Psy.D., who noted that although Plaintiff reported a twenty-year history of depression, she had only recently disclosed that to her physician. The ALJ also pointed out Dr. Coulter's observations that Plaintiff was vague in her responses, did not answer direct questions, and became agitated when pushed for detail. The ALJ found Coulter's assessment of Plaintiff's vague responses, failure to answer direct questions, mild agitation when asked for details, and her ability to maintain long-term employment contradicts the Plaintiff's statements that she experienced lifelong depression that impacted her ability to perform work-related activities. See *Goff v. Barnhart,* 421 F.3d 785, 792 (8th Cir. 2005) (inferring impairment was not disabling from history of work and absence of evidence of material deterioration).

Substantial evidence on the record as a whole supports the ALJ's finding that Plaintiff's medically determinable mental impairment of depression does not

14

cause more than minimal limitations in her ability to perform basic mental work activities and is therefore non-severe. *See Kirby v. Astrue*, 500 F.3d 705, 707-709 (8th Cir. 2007) (upholding finding that mental impairments were not severe based in part that claimant's "calculation, recall, comprehension, repetition, judgment, and behavior were normal" even though he suffered from depression).

**Whether the RFC is Supported by Substantial Evidence Related to Pain and Side Effects of Medications**

Plaintiff next argues that the RFC finding did not include mental limitations related to pain and the side effects of her medications.

"The Commissioner must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [her] limitations." *Hensley v. Colvin*, 829 F.3d 926, 931-32 (8th Cir. 2016) (citation omitted). "'Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace.' However, there is no requirement that an RFC finding be supported by a specific medical opinion." *Id.* at 932 (citation omitted). "[I]n evaluating a claimant's RFC, an ALJ is not limited to considering medical evidence exclusively. Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the

15

Commissioner." *Cox v. Astrue*, 495 F.3d 614, 619-20 (8th Cir. 2007) (citation omitted).

The ALJ acknowledged Plaintiff's complaints of pain and side effects due to medications, but after consideration of the objective evidence and Plaintiff's reported activities, declined to find limitations related to those allegations in the RFC. For instance, when discussing Plaintiff's side effects, the ALJ explained the evidence does not support that her medications caused confusion or cloudy thinking. Treatment records showed few complaints of side effects due to medications. Although Plaintiff testified Gabapentin and Baclofen are muscle relaxers which slows down her thought process, the ALJ also noted that there was no evidence of slowed thoughts, confusion, poor focus or poor concentration. The deficits on examination were mostly related to mood and affect, but were consistently normal in the objective findings.

The ALJ also considered Plaintiff's daily activities, such as personal care tasks, light household chores, driving, going to the grocery store weekly, paying bills and hobbies, and determined her to be engaged in a somewhat normal level of daily activity that is inconsistent with Plaintiff's allegation of disability and the medical evidence. The ALJ discussed Plaintiff's pain management providers and found the evidence illustrated stable medical conditions with intermittent pain management treatment, which contradicts her allegations of the severity of her physical limitations. The ALJ highlighted Plaintiff's physical therapy treatment,

16

but the record did not show additional injections, ablation, or orthopedic treatment. The ALJ considered Plaintiff's allegation that she needed to elevate her feet, but she found the objective medical evidence did not support her claim, and there was no evidence from a treatment provider with such a recommendation

In *Polaski*, the Eighth Circuit held, in evaluating a claimant's subjective complaints and related functional limitations, the ALJ should consider: the absence of objective medical evidence; the claimant's prior work record; and observations by third parties (including treating and examining physicians) regarding such matters as (1) the claimant's daily activities; (2) the duration, frequency, and intensity of pain or other symptoms; (3) any precipitating and aggravating factor; (4) the dosage, effectiveness, and side effects of medication; and (5) the claimant's functional restrictions. *Polaski v. Heckler,* 739 F.2d 1320, 1322 (8th Cir. 1984). The Eighth Circuit recognized "[t]he ALJ is in the best position to gauge the credibility of testimony and is granted deference in that regard." *See Estes*, 275 F.3d at 724. If the ALJ explicitly discredits a claimant's subjective complaints and gives good reasons, the Eighth Circuit has held it will defer to the ALJ's judgment, even if the ALJ does not cite to *Polaski* or discuss every factor in depth. *See Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007); *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004).

Here, the ALJ properly applied the pain standard based on Plaintiff's subjective complaints. The ALJ acknowledged that Plaintiff does have physical

17

and mental impairments, which warrant some work restrictions. However, the ALJ's decision to discredit those complaints was in conjunction with the record as a whole, which the ALJ adequately explained with good reasons supported by substantial evidence. In explaining her findings, the ALJ need only "minimally articulate reasons for crediting or rejecting evidence of disability." *Strongson v. Barnhart,* 361 F.3d at 1070 (citing *Ingram v. Chater*, 107 F.3d 598, 601 (8th Cir. 1997).

**Whether the ALJ's Step Four Finding was Supported by Substantial Evidence**

Plaintiff next challenges the ALJ's finding at Step Four. At the hearing, the ALJ's first hypothetical posed to the VE involved an individual with the Plaintiff's same age, education, and work history and an RFC identical to the ALJ's decision. The VE testified, consistent with the DOT, that person could perform Plaintiff's past work as an accounting clerk. The ALJ's second hypothetical, assumed the same facts as the first except the individual can only perform work at the sedentary exertional level, and added that the individual would need to alternate from standing at will, remaining at the workstation and on task. The VE testified that person could also perform Plaintiff's past work as an accounting clerk. The factors in the second hypothetical were also consistent with the DOT, except as to the sit/stand factor, which the VE testified to from her experience in vocational knowledge.

Plaintiff argues that this finding is not supported by substantial evidence because pain and side effects from medications support a finding that she is limited to simple, routine tasks, which eliminate her ability to perform her past work. However, the record does not support limitations beyond those listed in the RFC finding as discussed above. While the ALJ did ask a third hypothetical adding a limitation to simple, routine tasks, which the VE testified that individual could not perform Plaintiff's past work, the ALJ found Plaintiff did not have such limitations. *See Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006) (ALJ need not rely on VE testimony elicited in response to a hypothetical question that includes greater limitations than those ultimately included in the RFC determination); *See Also, Perkins v. Astrue*, 648 F.3d 892, 901-02 (8th Cir. 2011) (ALJ did not err in declining to adopt portions of VE's testimony, which included limitations that ALJ found unsupported by record). Therefore, substantial evidence in the record as a whole supports the ALJ's findings in Step Four that Plaintiff could perform her past work as an accounting clerk and was not disabled.

## Conclusion

After careful review, the Court finds the ALJ's decision is supported by substantial evidence on the record as a whole. *Perkins,* 648 F.3d at 900.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED.**

A separate judgment shall be entered incorporating this Memorandum and Order.

Dated this 23rd day of September, 2022.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE